**People of the State of Illinois, Plaintiff-Appellee, v. Roderick Coleman, Defendant-Appellant.**

**Gen. No. 54,343.**

First District, First Division.

June 15, 1970.

Braden, Hall, Barnes & Moss, of Chicago (Houston H. Hall, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James W. Reilley, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial defendant was convicted of the offense of criminal damage to property (Ill Rev Stats 1967, c 38, § 21–1(a)) and placed on probation for one year, the first sixty days to be served at the Vandalia State Farm. During the trial the court heard and denied defendant's motion to suppress. On appeal, defendant contends that (1) his arrest and a subsequent search and seizure were unlawful; (2) the trial judge erred in admitting certain evidence; and (3) he was not proved guilty beyond a reasonable doubt.

On March 22, 1969, Police Officer Chester Tomaszawski and his squad answered a silent alarm (ADT) burglary call to a men's store at 1716 East 87th Street in Chicago owned by Bert Simmons. Upon arrival he noticed some damage to a door at that location. The squad then returned to their usual duties and at approximately 12:33 a. m. a second ADT alarm was sounded for the same location. The officers returned to the location and entered the alley which was in back of 1716 East 87th Street. They saw a light blue Chevrolet backing up, and the occupants ignored a call from the police to halt. The officers gave chase and stopped the car in back of 8647 Stoney Island Avenue. One of the occupants (later identified as Kenneth Rufus) got out of the automobile and jumped behind a retaining wall. He, along with the other two occupants of the car (later identified as Donald Williams and defendant Coleman) were placed under arrest. While they were waiting for a patrol wagon to transport the defendants to the police station, Officer Tomaszawski, without a warrant, looked into defendant's automobile and saw a tire iron on the floor of the automobile and left of the driver's seat. He said, ". . . yes, it was right there where I could see it." Screwdrivers and a pair of pliers were found in the glove compartment.

Officer Tomaszawski further testified that after the defendants were transported to the station, the officers

went back to the store and met the ADT man. The owner of the store came up, and they notified a technician to take pictures of the door. The outside panel of the overhead door had been worked on and pulled away from the inside panel. Over objection, the court received in evidence People's exhibits, a photograph which represented the condition of the door, and the tire iron, screwdrivers and pliers. The officer also identified paint chips on the tire iron as matching the color of paint on the rear door of the store.

Bert Simmons, the owner of the store, testified that when he closed the store, the door was not damaged. On the first alarm call, about half the damage had been done. Also, about one hour elapsed between calls.

Defendant Coleman, along with Rufus and Williams, all denied their guilt. They stated that they had been parked in the parking lot for a short period of time while defendant and Rufus went to a pizza restaurant to see a friend who had been working there. The friend wasn't there, and when defendant and Rufus returned to the automobile and defendant was driving out of the parking lot, they were stopped by the police. Williams testified that he saw the tire iron for the first time in the police station and never saw a screwdriver or pliers in the car. Rufus testified that he did not see the tire iron in the automobile and that it was shown to them for the first time in the police station. Defendant Coleman testified that he saw the iron on the ground by the door. It was not found in the front seat of the car, but the police came in with it later.

Defendant Coleman initially contends that "the arrest in this cause was without a warrant, and without probable cause; that said arrest was based upon mere suspicion because no unlawful act was committed in the presence of the arresting officer, who had no information in reference to defendants." Defendant asserts that he had parked his car in a parking lot which had been

41

provided for customers of many merchants whose places of business were located in the area. Also, the neighborhood surrounding the store was a thickly populated place, and many persons walk the street day and night there. Authorities cited include People v. DeLuca, 343 Ill 269, 175 NE 370 (1931); People v. Chatman, 322 Ill App 519, 54 NE2d 631 (1944); and Kindred v. Stitt, 51 Ill 401 (1869).

In People v. DeLuca, in reversing the trial court, the Illinois Supreme Court stated (p 271):

> "Undoubtedly the law is that where an arrest is made by an officer who has reasonable ground for believing that the person arrested is implicated in the commission of a crime, such officer has a right to arrest without a warrant and to search the arrested person without a search warrant . . . but where there is no probable cause and the person is searched without a search warrant in an effort to discover evidence, and an arrest is afterwards made solely on the strength of the discovery, the evidence thus obtained is violative of his constitutional right and should be suppressed, on motion duly made for that purpose."

Defendant also contends that the search of defendant's automobile was made without authority and without specific purpose and was, therefore, unreasonable and unconstitutional. Defendant argues that as the arresting officer possessed no warrant for defendant Coleman's arrest and did not observe the commission of any offense, the search of the defendant's automobile was exploratory and made solely for the purpose of finding or procuring evidence of the defendant's guilt of the crime charged, or some other crime. Cited is United States v. Lefkowitz, 285 US 452, where the court said, "an arrest may not be used as a pretext to search for evidence."

The State argues that the existence of probable cause was sufficient to make the arrest, and the ensuing search and seizure was lawful in that the arresting officer had reasonable grounds to believe that the defendant was committing or had committed an offense. The State notes, "on the second alarm the officer and his partner entered an alley in back of the location of the alarm where they observed a light blue Chevrolet back out from directly behind the location of the alarm. When the police squadrol was three feet from the defendant's (subsequently identified) automobile the officer hollered for the occupants of the vehicle to stop." The occupants fled and the officers gave chase. After they stopped the car, the defendant remained in the car and was placed under arrest. The officers saw a tire iron laying on the left-hand side of the driver's seat in open view, and it was later established that paint chips on the tire iron matched the paint on the damaged rear door of the premises in question.

The authorities which we think furnish the guidelines to be used here include People v. Jones, 31 Ill2d 42, 198 NE2d 821 (1964), where it is stated (p 47):

> "[The] existence of reasonable cause which will justify an arrest without a warrant depends upon 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' . . . police officers 'often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' "

And People v. McCracken, 30 Ill2d 425, 197 NE2d 35 (1964), where it is stated (p 429):

> "Where, as here, the articles are in plain and open view and are observed by police officers under suspicious circumstances, it is not a 'search' nor an

43

unreasonable seizure for the officers to make a reasonable investigation hereof."

■ We conclude the totality of the facts and circumstances known to the officers at the time of the arrest was reasonable ground to justify the arrest of defendant and the search that followed. See People v. Maleck, 83 Ill App2d 380, 383, 227 NE2d 770 (1967).

Considered next is defendant's contention that "the trial judge erred in admitting in evidence improper oral and documentary evidence together with articles procured by unlawful means." This contention is primarily based on a photograph (State's Exhibit 1) taken of the door alleged to have been damaged by defendants, and State's Exhibit 2, the tire iron. We find no merit in this contention. In Foster v. Bilbruck, 20 Ill App 2d 173, 155 NE2d 366 (1959), it is stated (p 183):

> "Photographs have long been used in courts of Illinois for better presentation of evidence, and are not evidence in themselves, but are allowed for the purpose of enabling the jury to understand and apply the testimony. . . . Photographs stand on the same footing as a diagram, map, plan or model, and a photograph is a legitimate mode of proving conditions which can be shown by representation of that sort . . . ."

■ Officer Tomaszawski was shown the photograph and asked if it duly represented the condition of the door at the time he personally saw it, and he responded, "Yes, it does." We think this was sufficient for the court to rule that the photograph was admissible here.

■ As to Exhibit 2 (the tire iron), we find that it was properly admitted into evidence on the basis of our foregoing rulings concerning it.

44

Next considered is defendant's contention that "the evidence adduced by the People was circumstantial evidence and was insufficient to establish the guilt of the accused, and the same failed to exclude every reasonable hypothesis of his innocence." Defendant's authorities on this point include People v. Grizzel, 382 Ill 11, 46 NE2d 78 (1943), where it is stated (p 19):

> "In order to warrant a conviction of crime on circumstantial evidence, the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. . . .

> "It is true that direct evidence is not necessary, but to warrant a conviction on circumstantial evidence the facts proved must so thoroughly establish the guilt of the person accused as to exclude every reasonable hypothesis of his innocence."

We find no merit in this contention. We agree with the State that the testimony of Officer Tomaszawski shows that the overwhelming weight of the evidence proved the guilt of the defendant beyond a reasonable doubt. The statements made in People v. Mills, 98 Ill App2d 248, 240 NE2d 302 (1968), apply here. There it is stated (p 256):

> "Circumstantial evidence is legal evidence, and a conviction may be sustained on it alone if the character of said evidence convinces the trier of fact of the defendant's guilt beyond a reasonable doubt."

In a bench trial in a criminal case, a reviewing court, in view of the opportunities of observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to

45

justify a reasonable doubt of defendant's guilt. People v. Pena, 72 Ill App2d 305, 314, 219 NE2d 667 (1966).

After examining this record, we think the circumstantial evidence and the testimony of the police officer were sufficient to support a guilty verdict beyond a reasonable doubt, and for the reasons given the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.